IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY PARKER,<br><br>            Plaintiff,<br><br>    vs.<br><br>MATTHEW C. KRAMER, et al.,<br>            Defendants.<br>_____/ | CASE NO. CV-F-02-5117 AWI DLB P<br><br>FINDINGS AND RECOMMENDATIONS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[Doc. 59] |

**I.    Background**

Plaintiff Terry Parker ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983. On April 4, 2003, the District Court ordered that this action proceed on plaintiff's equal protection claim against defendants Bird and Fox based on allegations of racial discrimination as set forth in Claims Two and Three of the second amended complaint; and plaintiff's retaliation claim against defendant Bird as set forth in Claim Five. All other claims were dismissed. On October 18, 2004, pursuant to the unenumerated portion of Federal Rule of Civil Procedure 12(b), defendants filed a motion seeking dismissal based on plaintiff's failure to exhaust the available administrative remedies; or in the alternative, for summary judgment pursuant to Rule 56. On April 29, 2005, this Court recommended that defendants' motion to dismiss Claims Three and Five be granted. The Court reserved recommendation on defendants' motion for summary adjudication of Claim Two and ordered the parties to provide supplemental briefing in light of the United States

Supreme Court's ruling in <u>Johnson v. California</u>, 125 S.Ct 1141 (2005).  On May 24, 2005, defendants filed their supplemental brief as ordered by the court.  On July 22, 2005, the District Court adopted this Court's recommendation and dismissed Claims Three and Five.  Plaintiff has not responded to the Court's order for supplemental briefing.  The Court now issues its recommendation on defendants' motion for summary adjudication of Claim Two.

**II.    Defendants' Motion for Summary Judgment**

    **A.    Procedural Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id</u>.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Id</u>. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id</u>.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id</u>. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of

1  affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule
2  56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention
3  is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v.
4  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
5  809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a
6  reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818
7  F.2d 1433, 1436 (9th Cir. 1987).

8        In the endeavor to establish the existence of a factual dispute, the opposing party need not
9  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
10 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."
11 T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings
12 and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S.
13 at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

14       In resolving the summary judgment motion, the court examines the pleadings, depositions,
15 answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The
16 evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable
17 inferences that may be drawn from the facts placed before the court must be drawn in favor of the
18 opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655
19 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
20 obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen
21 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

22       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that
23 there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not
24 lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"
25 Matsushita, 475 U.S. at 587 (citation omitted).

26       **B.    Claim Two - Denial of Equal Protection**

27       In Claim Two, plaintiff alleges that defendants Bird and Fox violated his equal protection rights
28 in December 2000 by harassing inmates of African-American descent and committing racial

discrimination. Second Amended Complaint (SAC) at p. 9. Specifically, plaintiff alleges that on December 16, 2000, defendant Bird approached the cells of several Black inmates for cell searches after the yard was locked down following a racial incident on December 15, 2000. Id. Defendant did not search any White or Hispanic cells, but searched only Black inmates' cells. Id. Plaintiff further alleges that on December 20, 2000, an alarm went off in the prison industry area and after all prisoners were down, defendant Bird ordered several Black inmates to get up and go to a fenced area. Id. Defendant then ordered several White inmates to get up and move into an area. Id. Plaintiff alleges that no racial incident existed at the time and that defendant segregated the inmates by race as a discriminatory act. Id. Plaintiff alleges that defendant Fox "allowingly [sic] and knowingly permitt[ed] the defendant Lt. Bird to implement racist policies and acts." Id.

    1.    *December 16, 2000 Cell Search*

For purposes of this motion, defendants rely on plaintiff's account of the December 16, 2000 incident as set for in his inmate appeal dated December 21, 2000. Defendants' Motion for Summary Judgment, Ex. A. In this appeal, plaintiff states:

> On the night of December 15, 2000 there was a stareing [sic] match between Mexican and White inmates. The yard was locked down Saturday morning December16. After telling this inmate he suspected a problem between Mexican and Black inmates Lt. Bird came into building 5, went to cell 109 (a black cell) and searched it himself. Lt Bird came back after close custody count at 12:00, Lt. Bird came back to 5 building. He walked up on the second tier and went into cells 229 and 230, (both black cells) then left again. Lt. Bird openly displays and demonstrates he's prejudice and disrespect toward prisoners, (Blacks especially).

Defendants' Motion for Summary Judgement, Ex. A, p.4. Defendants argue that plaintiff, who is in cell 107, cannot state a claim for violation of the Equal Protection Clause based on this incident because his cell was not searched. Plaintiff does not dispute that he was in cell 107. See Defendants' Motion for Summary Judgment, Ex. A, p.2.

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that defendants acted with intentional discrimination against plaintiff or against a class of inmates which included plaintiff. Village

4

of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

The court finds that defendant has met his initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Plaintiff has submitted no evidence that he was treated in a discriminatory manner on December 16, 2000. Plaintiff describes allegedly discriminatory cell searches but as defendants point out, plaintiff's cell was not searched. Plaintiff has not responded to defendants' supplemental briefing nor do his prior pleadings create a triable issue of fact on this claim. Accordingly, summary adjudication is appropriate.

2.  *December 20, 2000 - Raced Based Separation of Inmates During Disturbance*

Defendants argue that plaintiff's account of the December 20, 2000 incident does not describe discriminatory conduct. In his inmate appeal plaintiff states:

> On December 20, 2000 an alarm went off in PIA area as inmates were on the ground, Lt. Bird went over to where the black inmates were on the ground and after a few words, had 2 blacks placed in an inclosed [sic] area and 3 white inmates were put in the same area before the command to resume program was given. No inmates (at that time) knew what the alarm was about and considering the climate created by Lt. Bird, that was very dangerous. Lt. Bird routinely has his line staff pull over, harass and or approach groups of Blacks, searching then breaking up the group. However white and Mexican inmates are overlooked or disregarded.

Defendants' Motion for Summary Judgment, Ex. A, p. 4. Defendants argue that rather than describing ethnic separation of inmates, plaintiff describes an instance of ethnic integration. Defendants argue that integration is not discriminatory conduct.

In support of their motion for summary judgment defendants initially submitted the declaration of defendant Bird where he declares under penalty of perjury that he has no independent recollection of the December 20, 2000 incident. Declaration of Robert Bird ("Bird Dec.") at ¶ 11. However, assuming

that it did occur, Bird states that ethnic segregation of inmates during a disturbance would occur only for the protection of the inmates whether involved in the disturbance or not. Bird Dec. at ¶ 12. If the members of various ethnic groups were considered a threat to each other in the event of a disturbance, then separation would occur, on the other hand, if the members of the various ethnic groups were not considered a threat to each other during a disturbance, then separation would not occur. Bird Dec. at ¶ 13. The treatment of various ethnic subdivisions, then depended whether there was a perceived risk to the safety and security of the institution and its inmates. Bird Dec. at ¶ 13. During disturbances at SCC, ethnic separation would occur only for the protection of all inmates and if members of various ethnic groups were considered a threat to each other, separation would occur. Bird Dec. ¶ 12, 13.

Defendants also submit the declaration of former defendant Chavez, Associate Warden at SCC. Chavez states that he investigated plaintiff's allegations regarding the December 20, 2000 incident and if the separation of inmates occurred as plaintiff described, it was a reasonable response to the safety and security needs of the institution at the time and was the correct decision because nothing happened to the inmates after the alleged separation and resumption of programming. Declaration of F.X. Chavez at ¶¶ 3, 6.

In his declaration, former defendant Fox, Facility Captain ant SCC states that inmates group themselves by ethnicity by their own choice and that some ethnic groups further subdivide themselves. Declaration of Michael Fox at ¶ 5. Fox states that ethnic separation of inmates during a disturbance, and prior to returning inmates to their cells for the duration of a lockdown, occurs only for the purpose of identifying those ethnic members who were involved in the disturbance and to provide protection for uninvolved inmates of the ethnic group. Fox Dec. at ¶ 8.

Racial discrimination in prison and jails is unconstitutional under the Fourteenth Amendment except for the "necessities of prison security and discipline." Cruz v. Beto, 405 U.S. 319, 321 (1972). Government imposed racial classifications challenged on equal protection grounds must be analyzed under the strict scrutiny standard of review. Johnson v. California, 125 S.Ct. 1141, 1148 (2005). Under strict scrutiny, the government has the burden of proving that classification is a narrowly tailored measure that furthers a compelling governmental interest. Id.

While defendants interpret plaintiff's inmate appeal to describe "racial integration" rather than

6

"racial segregation," plaintiff's second amended complaint describes the former. In Claim 2 plaintiff alleges as follows:

> On December 12, 2000, an alarm went off in the prison industry area, the prison policy is for all inmates to lay down in prone position on ground in the immediate area where they were previously standing. The Lt. Bird after all prisoners were already down on the ground ordered several black inmates to get up and the defendant as well to go into a fenced in area and then ordered several white inmates to get up and move into an area. No racial incident occurred or existed and the defendant with no rule, custom or practice approved by the prison on his own committed racial discriminatory acts by segregating inmates by skin color or race.

Second Amended Complaint at p.9. The Court must look at the facts in the light most favorable to plaintiff and by doing so, the Court finds that alleges that he was subjected to racial segregation on December 20, 2000. However, under the circumstances as established by undisputed facts, the Court finds that defendant's actions were appropriate and consistent with a narrowly tailored policy which furthers a compelling government interest.

In Johnson v. California, 125 S.Ct. 1141 (2005) the state prison inmate was challenging CDC's unwritten policy of racially segregating prisoners in double cells for up to 60 days each time they entered a new correctional facility. Johnson v. California, 125 S.Ct at 1142. The Supreme Count found the policy "immediately suspect" as an express racial classification and held that the Ninth Circuit erred in failing to apply strict scrutiny and thereby to require the CDC to demonstrate that the policy is narrowly tailored to serve a compelling state interest stating, "By perpetuating the notion that race matters most, racial segregation of inmates 'may exacerbate the very patterns of [violence that it is] said to counteract." Johnson v. California, 125 S.Ct at 1147 *citing* Shaw v. Reno, 113 S.Ct. 2816, (1993). However, the Court observed, as argued by the United States as *Amicus Curiae,* it may be possible to address "concerns of prison security through individualized consideration without the use of racial segregation, *unless warranted by as a necessary and temporary response to a race riot or other serious threat of race-related violence*." Johnson v. California, 125 S.Ct at 1148 *citing* Brief for United States as *Amicus Curiae* 24 (*emphasis added*).

Prison security is without question a compelling government interest and defendant's actions were narrowly tailored to further that interest. Under the circumstances present on December 20, 2000, if defendant Bird separated the inmates as plaintiff describes in his complaint, it was a necessary and

7

temporary response to a potential threat of race related violence and therefore warranted even under the strict scrutiny analysis required by Johnson v. California. There was clearly racial tensions on the Tuolumne yard just prior to December 20, 2000. See Bird Dec. ¶ 19; Fox Dec. ¶20. The separation of inmates by race was defendant's response to the immediate potential threat of violence. The Associate Warden characterized defendant Bird's actions as "a reasonable response to the safety and security needs of the institution at the time" and "obviously the correct decision because nothing happened to the inmates after the alleged separation and resumption of programming." Chavez Dec. ¶ 6. This was not the type of racial classification the Court warned about in Johnson but rather was separation of inmates in response to an immediate situation. "Prisons are dangerous places and the special circumstances they present may justify racial classifications in some contexts. Such circumstances can be considered in applying strict scrutiny, which is designed to take relevant circumstances into account." Johnson v. California, 125 S.Ct at 1152. Such circumstances were present on December 20, 2000.

Plaintiff has presented no evidence to establish a genuine issue as to any material fact in regard to this incident and the Court finds that defendant's conduct in separating the inmates was consistent with an appropriate policy which was narrowly drawn to further a compelling government interest. Defendants are therefore entitled to judgment as a matter of law.

**III.   Conclusion**

Viewing the facts in the light most favorable to plaintiff, the Court finds that there are no genuine issues of material fact with respect to plaintiff's equal protection claims and defendants are entitled to judgment as a matter of law. The Court therefore recommends that summary adjudication of Claim Two be GRANTED and judgment be entered in favor of defendants thereby concluding this action in its entirety.

The Court HEREBY ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within TWENTY (20) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." Replies to the Objections shall be served and filed within TEN (10) <u>court</u> days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 29, 2005**               **/s/ Dennis L. Beck**
3b142a                                   UNITED STATES MAGISTRATE JUDGE